**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

**PHI HEALTH, LLC**

Plaintiff,

v.

**ANTHEM INSURANCE COMPANIES, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD ("ANTHEM"), BOARD OF TRUSTEES OF THE NECA-IBEW WELFARE TRUST FUND; CARPENTERS HEALTH & WELFARE TRUST FUND; GENERAL MOTORS CO.; HEIDELBERG MATERIALS US; INDIANA UNIVERSITY HEALTH, INC.; PHILIPS ELECTRONICS NORTH AMERICAN CORP.; STAFFMARK GROUP, LLC; THE FARMERS BANK OF MILTON; WALMART, INC. AND HEALTH AND WELFARE PLANS SPONSORED BY THEM,**

Defendants.

Case No. 1:26-00644

---

**FIRST AMENDED COMPLAINT**

---

Plaintiff PHI Health, LLC ("PHI") files this First Amended Complaint against Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Anthem"), Board of Trustees of the NECA-IBEW Welfare Trust Fund; Carpenters Health & Welfare Trust Fund; General Motors Co.; Heidelberg Materials US; Indiana University Health, Inc.; Philips Electronics North American Corp.; Staffmark Group, LLC; The Farmers Bank of Milton; Walmart, Inc. ("Sponsors"), and the welfare benefits plans sponsored or administered by them ("Plans")

(collectively "Defendants) for the failure to pay overdue award(s) issued pursuant to the No Surprises Act ("NSA").

## I. INTRODUCTION

1. Defendants are violating the NSA. Congress created the Independent Dispute Resolution ("IDR") process as a streamlined method to resolve payment disputes between out-of-network providers of air-ambulance services and commercial health insurers.[1]

2. The IDR process is an arbitration in which a private arbitrator (known as an "IDR entity") issues a written determination selecting the amount due to the provider by a patient's commercial health insurer.

3. The NSA mandates that IDR determinations "shall be binding upon the parties" to the dispute and that payment by the plan or issuer "shall be made directly to the nonparticipating provider not later than 30 days" after the determination. These provisions create a money-mandating obligation and a right for providers to enforce that obligation.

4. Defendants have refused to comply with this mandatory obligation. More than 30 days – and many months - have passed since issuance of the IDR determinations at issue here; yet Defendants have not paid.

5. Without judicial enforcement, these "binding" awards would be rendered meaningless to providers, and Defendants could ignore their statutory payment obligation.

[1] This Complaint uses the shorthand "commercial health insurer" to reference all types of payors covered by the No Surprises Act, including individual health insurance issuers; group health insurance issuers; and self-insured group health plans, including employee welfare benefit plans subject to the Employee Retirement Income Security Act of 1974 ("ERISA").

6. This case seeks only enforcement—not review—of binding IDR determinations under the NSA, or alternatively, confirmation under the FAA and/or Indiana Arbitration Act. PHI does not ask this Court to revisit the merits of any IDR award.

7. PHI therefore brings this action, pursuant to the NSA, the Federal Arbitration Act ("FAA"), Indiana Arbitration Act, and the Employee Retirement Income Security Act ("ERISA"), seeking entry of judgment confirming the IDR Awards set forth in Exhibit B to this pleading and other applicable equitable relief seeking (a) entry of judgment confirming the IDR Award(s); (b) an award to PHI of $432,187.00 (the "IDR Award Balances"); and (c) equitable relief enforcing such obligations; together with such other relief as the Court deems appropriate.

## II. PARTIES

### Plaintiff

8. Plaintiff PHI Health, LLC is a limited liability company organized under the laws of the State of Louisiana and headquartered in Tempe, Arizona.

9. Defendant Anthem Insurance Companies, Inc. is an Indiana corporation organized under the laws Indiana and headquartered in Indianapolis, Indiana. Anthem, doing business as Anthem Blue Cross and Blue Shield, functions as either a health insurance issuer that is licensed and regulated by the Indiana Department of Insurance and provided insurance coverage for claims at issue or as a Third-Party Administrator ("TPA") of self-funded health and welfare benefit plans regulated by ERISA. Defendant's role as insurer or TPA is designated on Exhibit A.

10. In its role as TPA, Anthem, upon information and belief, is a fiduciary of the Plans, and is the authorized agent of each and every other Defendant named in this complaint. Anthem's receipt of notice of this lawsuit and the underlying arbitration was valid notice to all other Defendants, and Anthem's participation in the IDR process was on behalf of all other Defendants. Anthem has been served and has appeared in this case. Anthem its registered agent

for service is C T Corporation System, 334 North Senate Avenue, Indianapolis, Indiana 46204.

**Companies and Plans**

11. Defendant Board of Trustees of the NECA-IBEW Welfare Trust Fund ("NECA-IBEW") is a corporate entity organized under the laws of the State of Illinois and authorized to do business in Illinois. NECA-IBEW serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the NECA-IBEW Welfare Trust Fund (the "NECA-IBEW Plan"). NECA-IBEW is thus a representative and fiduciary of the NECA-IBEW Plan and is sued here in that capacity. NECA-IBEW and the NECA-IBEW Plan may be served with process by serving the Board of Trustees of NECA-IBEW Welfare Trust at 2120 Hubbard Ave., Decatur, IL 46202.

12. Defendant Trustees of the Indiana Carpenters Fund ("Carpenters Health") is a corporate entity organized under the laws of the State of Indiana and authorized to do business in Indiana. Carpenters Health serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Carpenters Health & Welfare Trust Fund (the "Carpenters Health Plan"). Carpenters Health is thus a representative and fiduciary of the Carpenters Health Plan and is sued here in that capacity. Carpenters Health and the Carpenters Health Plan be served with process by serving Fillenwarth, Dennerline, Groth & Towe, LLP at 429 East Vermont St., Suite 200, Indianapolis, IN 46204.

13. Defendant General Motors, LLC ("General Motors") is a corporate entity organized under the laws of the State of Delaware and authorized to do business in Indiana. General Motors serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the General

Motors Health Care Plan (the "GM Plan"). General Motors is thus a representative and fiduciary of the GM Plan and is sued here in that capacity. General Motors may be served with process by serving Corporation Service Company, 135 N. Pennsylvania St., Suite 1600, Indianapolis, IN 46204.

14. Defendant Heidelberg Materials US ("Heidelberg") is a corporate entity organized under the laws of the State of Delaware and authorized to do business in Indiana. Heidelberg serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Heidelberg Materials Health and Welfare Plan (the "Heidelberg Plan"). Heidelberg is thus a representative and fiduciary of the Heidelberg Plan and is sued here in that capacity. Heidelberg and the Heidelberg Plan may be served with process by serving the Corporation Service Company at 135 N. Pennsylvania Street, Suite 1600, Indianapolis, IN 46204.

15. Defendant Indiana University Health, Inc. ("Indiana Health") is a corporate entity organized under the laws of the State of Indiana and authorized to do business in Indiana. Indiana Health serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Indiana University Health, Inc. Health and Welfare Benefit Plan (the "Indiana Health Plan"). Indiana Health is thus a representative and fiduciary of the Indiana Health Plan and is sued here in that capacity. Indiana Health and the Indiana Health Plan may be served with process by serving Erin R. Lewis at 340 West 10th Street, Indianapolis, IN 46202.

16. Defendant Philips Electronics North American Corp. ("Philips") is a corporate entity organized under the laws of the State of Delaware and authorized to do business in Indiana. Philips serves as a plan sponsor for a health and welfare benefits program or group health insurance

policy for the benefit of its employees and dependents called, upon information and belief, the Philips Electronics North America Group Welfare Benefit Plan (the "Philips Plan"). Philips is thus a representative and fiduciary of the Philips Plan and is sued here in that capacity. Philips and the Philips Plan may be served with process by serving the Corporation Service Company at 135 N. Pennsylvania Street, Suite 1600, Indianapolis, IN 46204.

17. Defendant Staffmark Group, LLC ("Staffmark") is a corporate entity organized under the laws of the State of Ohio and authorized to do business in Indiana. Staffmark serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Staffmark/EMS Health and Welfare Benefit Plan (the "Staffmark Plan"). Staffmark is thus a representative and fiduciary of the Staffmark Plan and is sued here in that capacity. Staffmark and the Staffmark Plan may be served with process by serving the Corporation Service Company at 135 N. Pennsylvania Street, Suite 1600, Indianapolis, IN 46204.

18. Defendant The Farmers Bank of Milton ("FBM") is a corporate entity organized under the laws of the State of Kentucky and authorized to do business in Indiana. FBM serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, The Farmers Bank of Milton Health and Welfare Benefit Plan (the "FBM Plan"). FBM is thus a representative and fiduciary of the FBM Plan and is sued here in that capacity. FBM and the FBM Plan may be served with process by serving David A. Hertz at 615 Simcoe Ln., Madison, IN 47250.

19. Defendant Walmart, Inc. ("Walmart") is a corporate entity organized under the laws of the State of Delaware and authorized to do business in Indiana. Walmart serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its

employees and dependents called, upon information and belief, the Walmart, Inc. Associates Health and Welfare Plan (the "Walmart Plan"). Walmart is thus a representative and fiduciary of the Walmart Plan and is sued here in that capacity. Walmart and the Walmart Plan may be served with process by serving the CT Corporation System at 334 N. Senate Ave., Indianapolis, IN 46204.

20. Board of Trustees of the NECA-IBEW Welfare Trust Fund; Carpenters Health & Welfare Trust Fund; General Motors Co.; Heidelberg Materials US; Indiana University Health, Inc.; Philips Electronics North American Corp.; Staffmark Group, LLC; The Farmers Bank of Milton; Walmart, Inc. are each a "Company" and collectively the "Companies." Each benefits plan sponsored by a Company will be referred to as a "Plan" and collectively as the "Plans."

21. Each Plan is a health and welfare benefits program or group health insurance policy covering a patient whose transport is at issue in this case, as identified in Exhibit A.

## III. JURISDICTION AND VENUE

22. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because PHI's claims arise under federal law, including the NSA, 29 U.S.C. § 1185e, 29 U.S.C. § 1185f, 42 U.S.C. § 300gg-111, and 42 U.S.C. § 300gg-112, which mandate the payment of IDR awards within thirty days of issuance.

23. As to Companies and Plans, this Court also has federal question jurisdiction under the civil enforcement provisions of ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).]

24. The Court also has personal jurisdiction over Anthem because it is an Indiana company that is headquartered in Indianapolis, Indiana.

25. Venue is proper under 28 U.S.C. § 1391(b)(2) because, Anthem's principal place of business is in this District, and, on information and belief, the acts and omissions giving rise to

PHI's claims—including the administration, processing, and decisions regarding nonpayment of claims and IDR awards—occurred in this District.

26. The Court has personal jurisdiction over Carpenters Health and Indiana Health because they are incorporated and headquartered in Indiana.

27. The Court has personal jurisdiction over General Motors, Staffmark Group, Farmers Bank of Milton, Carpenters Health, Walmart, LC Services, KFB Insurance, and Heidelburg and their benefits plans because they are all registered and authorized to conduct business in Indiana, and they purposefully availed themselves of conducting activities in Indiana by selecting and utilizing Anthem, an Indiana-based third-party administrator, to administer claims under their respective plans, including delegating discretionary authority for claims administration to entities operating in Indiana, and causing the acts and omissions giving rise to this action to occur in Indiana. PHI's claims arise directly from those activities.

28. The Court has personal jurisdiction over NECA-IBEW because it purposefully directed its activities toward Indiana by sponsoring and administering an employee welfare benefit plan that provides coverage to participants and beneficiaries employed in Indiana, authorizing and overseeing claims administration affecting Indiana participants and providers, and utilizing entities conducting claims administration in Indiana. PHI's claims arise directly from those activities.

29. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because the Plans are administered in this District, and the alleged breaches giving rise to PHI's claims occurred in this District through Anthem's administration, processing, and nonpayment of claims and IDR awards on behalf of the Plans. In addition, venue is proper because Anthem resides in this District, and the Companies and Plans may be found in this District through their contacts with

and direction or control over claims administration activities conducted in this District on their behalf.

## IV. FACTUAL BACKGROUND

### A. The Importance of PHI's Service.

30. The air ambulance industry plays an integral role in the American healthcare system, and PHI provides an essential service for many Americans. Air ambulances serve as a lifeline connecting critically ill and injured patients to healthcare, particularly in rural American communities where, between 2010 and 2021, at least 106 have closed.[2]

31. Air ambulances transport trauma, stroke, heart attack, and burn patients and other emergent cases requiring critical care. Time is of the essence during air medical transport. By reaching the patient quickly (to provide emergency interventions) and then transporting that patient quickly to a qualified treatment facility, air ambulances save and improve lives.[3]

32. The delivery of on-demand, life-saving air ambulance services is expensive and requires substantial investments in specialized aircraft, air bases, technology, personnel, and regulatory compliance systems.

---

[2] S. McCarthy, MD, *et al.*, *Impact of Rural Hospital Closures on Health-Care Access*, J. Surgical Research, Feb. 2021 (258), pp. 170-178.

[3] *See, e.g.*, O. Lapidus *et al., Trauma patient transport to hospital using helicopter emergency medical services or road ambulance in Sweden: a comparison of survival and prehospital time intervals,* Scandinavian Journal of Trauma Resuscitation and Emergency Medicine (2023), vol. 31, p.101, https://perma.cc/WGP8-CSXC (based on study of medical records of 74,032 patients receiving emergency medical transports in Sweden between 2012 and 2022, authors concluded that "HEMS [helicopter-transported] patients had significantly lower mortality compared to patients transported by [ground] EMS"); D. Michaels, *et al.*, *Helicopter versus ground ambulance: review of national database for outcomes in survival in transferred trauma patients in the USA*, Trauma Surgery & Acute Care Open, Mar. 6, 2019, https://perma.cc/KU8E-YLVE (based on analysis of 469,407 trauma patients receiving ground or air transport in the United States in 2014, and after adjusting for age, gender, and Injury Severity Score (ISS), the authors concluded that "trauma patients who were transferred by helicopter were 57.0% less likely to die than those transferred by GA [ground ambulance]").

33. PHI is critically dependent on payments from commercial health insurers derived from the NSA's IDR process. PHI provides just one service: emergency medical transport. The majority of the patients transported by PHI are covered by Medicare or Medicaid. Those government programs' reimbursements typically do not even cover PHI's costs of providing the services. PHI is therefore critically dependent upon the payments it receives from commercial health insurers, especially the payments now governed by the NSA.

**B. Background on the No Surprises Act ("NSA").**

34. The NSA became effective on January 1, 2022.

35. The NSA imposes a federal obligation on commercial health insurers to pay out-of-network providers for certain air ambulance services. The commercial health insurers must pay the applicable "out-of-network rate" due for the service directly to the provider, less any cost-sharing amount owed by the patient.

36. Pursuant to the statute, a group health plan or insurer has 30 days from which the bill for a covered service is transmitted by the provider to pay or deny the claim. 29 U.S.C. § 1185e (b)(1)(C); 29 U.S.C. § 1185f(a)(3)(A); 42 U.S.C. § 300gg-111(b)(1)(C); 42 U.S.C. § 300gg-112(a)(3). If initial payment is too low, the provider may initiate an "open negotiation period" to attempt to negotiate a higher amount. 29 U.S.C. § 1185e(c)(1)(A); 29 U.S.C. § 1185f(b)(1)(A); 42 U.S.C. § 300gg-111(c)(1)(A); 42 U.S.C. § 300gg-112(b)(1). If the negotiations fail, the provider may initiate the IDR process. 29 U.S.C. § 1185e(c)(1)(B); 29 U.S.C. § 1185f(b)(1)(B); 42 U.S.C. § 300gg-111(c)(1)(B); 42 U.S.C. § 300gg-112(b)(2).

37. The IDR process is a mandatory arbitration process used to determine pricing for out-of-network air ambulance transports of patients who are covered by commercial health insurers.

38. Pursuant to the NSA, the U.S. Departments of Labor, Health and Human Services,

and the Treasury (the "Departments") issued regulations to implement the IDR process. The Department or Departments with regulatory authority over a specific air ambulance transport and subsequent IDR dispute depends on the type of health insurance or group health plan at issue.

39. The IDR process is baseball-style arbitration. It requires each party to submit proposed offers of payment for the services at issue to a third-party IDR entity. 29 U.S.C. § 1185e (c)(5), 1185f(b)(5); 42 U.S.C. § 300gg-111(c)(5); 42 U.S.C. § 300gg-112(b)(5). The IDR entity considers both proposed offers and several statutory factors (about which the parties may submit information in support of their offers) and then must select one of the parties' offers as the payment amount owed for the services at issue. *Id.*

40. The NSA makes "binding" the IDR entity's determination. The commercial health insurer must make any additional "payment required" by the determination "directly to the nonparticipating provider **not later than 30 days after** the date on which such determination is made" by the IDR entity. 29 U.S.C. § 1185e(c)(5); 29 U.S.C. § 1185f(b)(5); 42 U.S.C. § 300gg-111(c)(5); 42 U.S.C. § 300gg-112(b)(5) (emphasis added).

41. Once a certified IDR entity issues a determination, the NSA affords the losing party only a narrow opportunity to challenge the award on the bases enumerated in 9 U.S.C. § 10(a)(1)-(4). 29 U.S.C. § 1185e(c)(5)(E); 29 U.S.C. § 1185f(b)(5); 42 U.S.C. § 300gg-111(c)(5)(E); 42 U.S.C. § 300gg-112(b)(5). Any other attempt to challenge the award is barred. *Id*.

42. In enacting the NSA, Congress fundamentally altered the manner in which providers may obtain payment for covered services. Rather than permitting providers to pursue their traditional collection and reimbursement remedies, Congress required providers and payors to resolve payment disputes through a mandatory federal IDR process and made the resulting determinations binding. Congress further required payors to satisfy the payment amount

determined through that process within thirty days, subject only to the limited vacatur grounds incorporated from the Federal Arbitration Act. The statute thus replaces providers' traditional enforcement mechanisms—including their right to bill patients for the full cost of providers' services—with a mandatory federal dispute-resolution framework that culminates in a binding payment obligation.

43. The NSA's restrictions on judicial *review* apply only to efforts to vacate or otherwise challenge the validity of an IDR determination, as noted above. Nothing in the statute extends those limitations to actions seeking to enforce compliance with a final and binding IDR determination.

44. Although the Departments are authorized to provide systemic oversight of the statute—including data collection, audits, rulemaking, and the imposition of modest civil monetary penalties payable to the government to deter systemic noncompliance—they lack authority to compel payment of individual IDR awards to prevailing providers. The NSA provides no administrative mechanism through which a prevailing provider may compel payment of an individual IDR award, leaving judicial enforcement as the only means of effectuating the statute's mandatory payment obligation.

45. Absent judicial enforcement, a losing payor could disregard a binding IDR determination without satisfying the underlying payment obligation, rendering Congress's mandatory payment requirement effectively unenforceable. The NSA's text and structure do not permit that result; rather, they require that binding IDR determinations be enforceable so that prevailing providers receive the payments to which they are entitled.

**C. PHI Filed Arbitration and Prevailed, Yet Defendant(s) Refuse to Pay.**

46. The air ambulance services provided by PHI were air ambulance services furnished as a nonparticipating provider to participants, beneficiaries or enrollees ("Patients") of commercial health insurers. Those services are "qualified IDR items and services" under 45 C.F.R. § 149.510(xi)(A) and 29 C.F.R. § 2590.717, and they qualify for mandatory payment under the NSA, including 29 U.S.C. §§ 1185e(a)(1), 1185f(a); 42 U.S.C. § 300gg-111(a)(1); and 42 U.S.C. § 300gg-112(a).

47. Defendants and Patients received the benefit of PHI's air ambulance services during times of emergent medical need. In many situations, lives were saved or more serious conditions avoided (and thus the costs associated therewith).

48. PHI followed industry standard billing process for billing Defendants for these transports.

49. In response, Plan Administrator sent PHI either denial of payment or low initial payments to PHI for the two service codes billed for the transports.

50. Because the initial payments were deficient, PHI turned to the dispute resolution process set forth in the NSA.

51. PHI first timely initiated the open negotiation process. The dates on which open negotiation was initiated for the unpaid award(s) are listed on Exhibit A. The parties were unable to agree to a payment rate for PHI's services during the open negotiation periods.

52. When open negotiations failed, PHI timely initiated IDR proceedings by submitting notices of initiation through the federal IDR portal for the transports and service codes at issue. The dates on which IDR proceedings were initiated are listed on Exhibit A.

53. During the IDR process, PHI timely submitted its offers for payment, as well as information in support of those offers.

54. Anthem (as insurer or TPA) received notice of the related IDR proceedings and submitted an offer and supporting documentation and participated either without objecting to the dispute(s)' eligibility for the federal IDR process or raised objections concerning the dispute(s)' eligibility for the federal IDR process, and those objections were adjudicated and rejected by the certified IDR entity before issuance of the IDR Awards.

55. The certified IDR entity (i.e., arbitrator) then issued written determinations, which resulted in PHI being owed additional payments for the out-of-network services (the "IDR Awards"), copies of which are attached as Exhibit B. The IDR Awards are final and binding. PHI is not aware of Defendants seeking vacatur, modification, or correction of any IDR Awards identified in Exhibits A and B.

56. PHI seeks to recover the outstanding balances due on the IDR Awards, together with applicable statutory or equitable interest, and all further relief to which it is entitled.

## V. CLAIMS

### Count 1: Confirmation of IDR Awards Under the NSA (29 U.S.C. § 1185e(c)(5)-(6); 29 U.S.C. § 1185f(b)(5)-(6)); 42 U.S.C. § 300gg-111(c)(5)-(6); 42 U.S.C. § 300gg-112(b)(5)-(6))

57. PHI incorporates by reference the allegations of the preceding paragraphs.

58. The NSA creates enforceable rights for providers like PHI. The NSA uses clear, mandatory, rights-creating language, including that a determination of a certified IDR entity "*shall be binding upon the parties involved*" and that payment "*shall be made directly to* [PHI] *not later than 30 days after* the date on which such determination is made" by the IDR entity. 29 U.S.C. § 1185e(c)(5)(e), (c)(6); 29 U.S.C. § 1185f(b)(5)-(6); 42 U.S.C. § 300gg-111(c)(5)(E), (c)(6); 42 U.S.C. § 300gg-112(b)(5)-(6) (emphasis added).[4] These provisions impose a specific money-

[4] And, as applicable, 26 U.S.C. § 9817.

mandating obligation to pay a sum certain to providers by a date certain. PHI, as a provider, is within the class of entities the NSA is designed to protect.

59. Congress specified that a provider is owed a specific amount (as determined by the certified IDR entity), from a specific payor (the plan or insurer that participated in the IDR process), by a date certain (no later than 30 days after the determination). Statutes that impose such mandatory payment obligations have long been understood to create enforceable rights and remedies, particularly where, as here, the obligation is fixed, final, and non-discretionary. *See, e.g., Maine Cmty. Health Options v. United States*, 590 U.S. 296, 324–28 (2020) ("Statutory 'shall pay' language often reflects congressional intent to 'create both a right and a remedy'").

60. These provisions are phrased in explicit, rights-creating terms and are unmistakably focused on the class of entities Congress intended to benefit—out-of-network emergency providers that prevail in the IDR process. They satisfy the standard articulated in *Health & Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023), and *Gonzaga University v. Doe*, 536 U.S. 273 (2002), for the creation of enforceable federal rights.

61. This action does not seek judicial *review* of the merits of any IDR determination, which Congress limited to the narrow grounds for vacatur under the Federal Arbitration Act. 29 U.S.C. § 1185e(c)(5)(E)(i); 42 U.S.C. § 300gg-111(c)(5)(E)(i). Instead, this action seeks judicial *enforcement* of a binding award. Judicial enforcement is categorically different from judicial review in that it does not seek to disturb the written determination, and judicial enforcement is necessary to give effect to Congress's command that binding determinations be timely paid. *PHI Health, LLC v. Optimum Choice, Inc. d/b/a United Healthcare,* No. 25-CV-2320-ABA, 2026 WL 850453, at *9 (D. Md. Mar. 27, 2026); *see also Richard Agag, MD v. Cigna Health & Life Ins. Co.*, No. 3:25-CV-00498 (SRU), 2026 WL 1021213, at *13 (D. Conn. Apr. 15, 2026).

62. Absent judicial enforcement, the NSA's declaration that IDR determinations are "binding" and "shall" be paid would be rendered precatory rather than mandatory, contrary to Congress's express design.

63. No federal agency is authorized by the NSA to compel payment of individual IDR awards through administrative proceedings. Although the Departments were directed under the NSA to engage in administrative rulemaking, to conduct audits of payors' "qualifying payment amount" calculations, and to select and certify IDR arbitrators, the NSA *does not* direct or empower these agencies to collect, adjudicate, or compel payment from insurers to providers.

64. Absent judicial enforcement, Defendant(s) could ignore binding IDR determinations with impunity, rendering Congress's carefully constructed dispute-resolution framework meaningless. *PHI Health*, 2026 WL 850453, at *8; *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 227–29 (D. Conn. 2025); *Richard Agag, MD*, 2026 WL 1021213, at *13.

65. In the NSA, Congress prohibited providers from balance billing patients and extinguished common-law and state-law avenues for recovery. The IDR process and the mandatory payment obligation that follows a binding determination are the exclusive means by which providers may obtain compensation. It is inconceivable that Congress intended to strip providers of all alternative remedies while simultaneously leaving prevailing providers without any mechanism to enforce binding federal payment determinations.

66. PHI thus has a right under the NSA to judicial enforcement of IDR Award that commercial health insurers fail to pay within 30 days.

67. More than 30 days have passed since each IDR Award was issued, and PHI has not received the payment due on those awards.

68. Defendants have not filed suit to vacate the IDR Award pursuant to the limited grounds authorized by statute; they simply have not paid the award at all.

69. The amounts owed on unpaid, partially paid, and late-paid awards plus prejudgment and post-judgment interest should be issued as a final judgment.

**Count 2: Confirmation of IDR Award Under Federal Arbitration Act**
**(against all Defendants)**
**(9 U.S.C. §§ 1, *et seq*.)**

70. PHI incorporates by reference the allegations of the preceding paragraphs.

71. The IDR process constitutes arbitration within the meaning of the Federal Arbitration Act.

72. Defendants agreed to binding dispute resolution. For example, Defendant(s) made an offer on the Explanation of Benefits for the services at issue that PHI could utilize the federal IDR process to determine the amount due to PHI for its out-of-network services which PHI accepted by initiating the IDR process; Defendants then participated in the resulting IDR process by submitting their own offers of payment and information and support. In the limited instances where Defendants objected, those objections were adjudicated and rejected by the certified IDR entity before issuance of the IDR Awards. Defendants also voluntarily provided or administered coverage or benefits subject to the NSA, knowing that doing so required participation in the federal IDR process; and they thereby further consented to participate in the federal IDR process.

73. In the NSA, Congress also indicated that IDR written determinations are to be treated as arbitration awards. For example, Congress mandated that such an award could only be vacated on the grounds set forth in Paragraphs 1 through 4 of Section 10 of the Federal Arbitration Act.

74. The certified IDR entities acted as neutral adjudicators with respect to the IDR

Award.

75. The IDR Award is a valid arbitration award that has not been vacated or set aside by any authority.

76. Confirmation is not "judicial review" but rather entry of the awards previously rendered. The IDR Award(s) should thus be confirmed by judgment of this Court pursuant to the FAA, 9 U.S.C. § 9.

**Count 3: Confirmation of IDR Award Under the Indiana Arbitration Act**
**Ind. Code § 34-57-2-1 *et seq.***
**(against all Defendants)**

77. PHI incorporates by reference the allegations of the preceding paragraphs.

78. The IDR process constitutes arbitration within the meaning of the Indiana Arbitration Act.

79. Defendants agreed to binding dispute resolution. For example, Defendants made offers on the Explanation of Benefits for the services at issue that PHI could utilize the federal IDR process to determine the amount due to PHI for its out-of-network services (which PHI accepted by initiating the IDR process). Defendants then participated in the resulting IDR process, by submitting their own offer for the amount of payment due to PHI with information in support of its offer. In limited circumstances, Defendants raised objections concerning the disputes' eligibility for the federal IDR process, and those objections were adjudicated and rejected by the certified IDR entity before issuance of the IDR Awards. Defendants also voluntarily provided or administered coverage or benefits subject to the NSA, knowing that doing so required participation in the federal IDR process; and they thereby further consented to participate in the federal IDR process.

80. In the NSA, Congress also indicated that IDR written determinations are to be

treated as arbitration awards. For example, Congress mandated that such an award could only be vacated on the grounds set forth in Paragraphs 1 through 4 of Section 10 of the Federal Arbitration Act.

81. The certified IDR entities acted as neutral adjudicators with respect to the IDR Award.

82. The IDR Award is a valid arbitration award that has not been vacated or set aside by any authority.

83. Confirmation is not "judicial review" but rather entry of the awards previously rendered. The IDR Award(s) should thus be confirmed by judgment of this Court pursuant to the Indiana Arbitration Act, Ind. Code § 34-57-2-1 *et seq*.

**Count 4: Claim for Enforcement of NSA Under ERISA and Payment of Plan Benefits (ERISA 29 U.S.C. § 1132(a)(1)(B))**

*(Limited to awards involving ERISA plans as indicated on Exhibit A)*

84. PHI realleges and incorporates all preceding paragraphs.

85. On information and belief, the accounts set forth on Exhibit A as ERISA claims involve Patients transported by PHI who, at the time of the transport, were participants or enrollees in or beneficiaries of employee welfare benefit plans—specifically group health plans—subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended (collectively, the "ERISA Claims"). The benefit plans that apply to these accounts are called the "ERISA Plans."

86. Upon information and belief, the names of the ERISA Plans, their sponsors and administrators are set forth at Exhibit A. Such parties are collectively referred to herein as the "ERISA Defendants." The Plan Administrator and Plan Sponsor act, on information and belief, as fiduciaries and/or parties exercising discretionary authority or control over plan administration and claims payment.

87. With respect to the ERISA Claims, PHI has been assigned all of Patients' claims under and with respect to the ERISA Plans, including Patients' rights under 29 U.S.C. §§ 1332(a)(1) and (a)(3) such as to recover benefits due and to seek equitable relief. The Assignments of Benefits state, in relevant part:

4) **Authorized Representative:** I hereby designate and authorize Provider, to the full extent permissible under law and under any applicable Benefit Plan, including any ERISA plan, to act as my Authorized Representative and to exercise: (1) the right and ability to act on my behalf in connection with any claim, right or cause of action that I may have under such Benefit Plan; and (2) the right and ability to act on my behalf to pursue such claim, right, or cause of action in connection with said Benefit Plan (including but not limited to, the right to act on my behalf in respect to a Benefit Plan governed by the provisions of ERISA as provided in 29 C.F.R. 425603031(b)(4)) with respect to any healthcare expense incurred as a result of the Services I received from Provider and, to the extent permissible under the law, to claim on my behalf such benefits, claims, or reimbursement, and any other applicable remedy, including fines. A photocopy of this Consent and Assignment shall be as effective and valid as the original.

88. ERISA, as amended by the NSA, also mandates the assignment of Patients' claims and benefits to PHI by operation of law. ERISA mandates that the ERISA Plans "shall . . . pay" the amount due on the IDR awards "directly to" the beneficiary's provider of air ambulance services. 29 U.S.C. § 1185f(a)(3); *see also id.* § (b)(6) (requiring payment "shall be made directly to the nonparticipating provider" by the ERISA Plans).

89. PHI thus has stepped into the shoes of Patients and is now considered a beneficiary of the ERISA Plans pursuant to 29 U.S.C. § 1002(8).

90. Subchapter I of ERISA incorporates requirements of the NSA, including NSA's requirement that a determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "shall be made directly to the nonparticipating provider not later than 30 days after the date on which such determination is made." 29 U.S.C. § 1185e(c)(5)(E)(i)(I); *id.* § 1185f (b)(5)(D), (6).

91. Upon information and belief, the terms of the ERISA Plans incorporate NSA requirements. Among those incorporated requirements is the obligation for IDR written determinations to be fully paid within 30 days.

92. As the assigned beneficiary, PHI is entitled to enforce the requirements of the NSA, as incorporated into ERISA and, in turn, the terms of the ERISA Plans—including the duty to pay written determinations within 30 days.

93. On information and belief, the ERISA Plans—including their guarantee of NSA-compliant coverage for air ambulance services—were provided as consideration for labor services provided by Patients or their immediate family members to the Plan Sponsors, who also paid at least a portion of premiums due for such coverage. The benefits purchased with that consideration were supposed to ensure that Patients' air ambulance providers were fully compensated for their services consistent with the terms of the ERISA Plans and ERISA itself.

94. Patients have a strong and concrete interest in ensuring that their group health plans comply with the NSA's requirement that they fully and promptly satisfy IDR written determinations. Patients require the continued availability of air ambulance services—as shown by their use of those services in an emergency here.

95. PHI and other air-ambulance providers have aircraft and personnel on standby 24/7 regardless of whether an emergency transport is needed. Those high fixed costs must be offset by reliable payment for beneficiaries' air ambulance services by commercial payors, including group health plans, to remain available.

96. Many of the transports at issue here were provided by PHI to patients in rural or super rural (also known as frontier) parts of the country. Rural areas are remote and sparsely populated, with people often far away from quality specialized healthcare (including trauma care). Rural areas face challenges in providing access to health and human services. Health plan beneficiaries in rural areas are particularly invested in making sure national air ambulance

providers like PHI are timely and actually paid IDR awards so that life-saving air ambulance transports remain available.

97. Under 29 U.S.C. § 1132(a)(1), PHI, as assignee-beneficiary, is entitled to sue "to recover benefits due to [it] under the terms of his plan, to enforce [its] rights under the terms of the plan, or to clarify [its] rights to future benefits under the terms of the plan."

98. On information and belief, the benefits due to PHI, as assignee-beneficiary, under the terms of the ERISA Plans include the amounts due pursuant to the written determinations—which issued pursuant to PHI's proper claims for benefits under the ERISA Plans. Upon information and belief, the rights of PHI, as assignee-beneficiary, under the terms of the ERISA Plans include having the ERISA Plans (either directly or acting through their administrators) pay the written determination within 30 days. The ERISA Plans have refused to pay those benefits—let alone to do so within 30 days.

99. The ERISA Plans' and other ERISA Defendants failure to pay the ERISA Claims within 30 days (and ongoing refusal to do so) violates the Patients' (and therefore PHI's) rights under ERISA (including 29 U.S.C. §§ 1185e & 1185f)) and the terms of the ERISA Plans. That failure to pay constituted an abuse of discretion, including by i) improperly interpreting and applying the ERISA Plans' terms that are not ambiguous; ii) exercising discretion over non-discretionary terms in the ERISA Plans; and iii) denying PHI payment and benefits under the terms of the ERISA Plans.

100. The denial of payment and benefits owed on written determinations were not substantially justified decisions, were arbitrary and capricious, were unsupported by substantial evidence, constituted abuse of any discretion allowed, and were wrongful under all of the

circumstances. The payment obligations with respect to a written determination are automatic and unambiguous.

101. Pursuant to 29 U.S.C. § 1132(a)(1), PHI is therefore entitled to the unpaid amount on the written determination, plus interest.

102. PHI is excused from any requirement to exhaust the ERISA Plans' appeal processes (or such processes are deemed exhausted) before filing this suit because, *inter alia*, i) the ERISA Plans have breached statutory and regulatory requirements; ii) any appeal would be futile since the ERISA Plans would already have missed their payment deadline; and iii) with respect to ERISA Plans' failure to satisfy IDR written determinations, the ERISA Plans do not afford an appeal procedure that provides full and fair review nor do they provide instructions for how to utilize their appeal procedure (if any).

103. Pursuant to 29 U.S.C. § 1132(g), PHI further seeks an award of reasonable attorney's fees and costs incurred in bringing this action.

**Count 5: Equitable Relief Pursuant to ERISA**
**(29 U.S.C. §§ 1132(a)(3))**

104. PHI incorporates by reference the allegations of the preceding paragraphs.

105. This claim is pleaded in the alternative to any claim for benefits under 29 U.S.C. § 1132(a)(1)(B), and PHI seeks all forms of equitable relief available under 29 U.S.C. § 1132(a)(3) to remedy and prevent continuing violations of ERISA.

106. The Plans identified in Exhibit A are employee welfare benefit plans governed by ERISA, 29 U.S.C. § 1001 *et seq*. PHI, as assignee, is authorized to enforce ERISA's requirements, including those imposed by the NSA as incorporated into ERISA.

107. ERISA, as amended by the NSA, requires group health plans to cover out-of-network air ambulance services and to pay the applicable out-of-network rate determined through

the statutory process, *see* 29 U.S.C. § 1185f(a)(3)(B), and "shall" make payment directly to the provider within 30 days, *see* 29 U.S.C. § 1185f(b)(6).

108. On information and belief, the NSA's coverage and payment requirements are incorporated into and form part of the terms of the Plans. Accordingly, payment of the amounts determined through the NSA's IDR process constitutes a covered benefit owed for air ambulance services furnished to the Patient.

109. Defendants, acting as fiduciaries and/or parties exercising discretionary authority or control over plan administration and claims payment, have failed and refused to comply with these mandatory ERISA obligations.

110. Defendants' conduct violates ERISA, the terms of the Plan, and their fiduciary duties, including, but not limited to: (a) failing to pay benefits in accordance with binding IDR determinations; (b) wrongfully denying or withholding covered Plan benefits required by ERISA and the terms of the Plan; and (c) failing to administer Plans in accordance with governing federal law.

111. PHI seeks equitable relief under 29 U.S.C. § 1132(a)(3) to redress these violations and to enforce ERISA's provisions. Such equitable relief includes, without limitation: (a) an order requiring Defendants to comply with ERISA and the No Surprises Act by paying the full amounts owed under the IDR Awards; (b) appropriate equitable surcharge in the amount of unpaid benefits and losses caused by Defendants' violations; (c) declaratory relief establishing that IDR determinations are binding and must be timely paid under ERISA; (d) injunctive relief requiring Defendants to implement procedures and practices that ensure compliance with ERISA and timely payment of current and future IDR awards.

112. Pursuant to 29 U.S.C. § 1132(g), PHI further seeks an award of reasonable attorneys' fees, costs, and such other relief as the Court deems equitable and proper.

## VI. JURY TRIAL DEMAND

113. PHI demands a trial by jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, PHI respectfully prays for judgment against Defendant(s) for the following damages and relief:

1. An award of damages in the amount of the outstanding balances owed on the IDR Award(s) (the "IDR Award Balances");

2. Pre-judgment and post-judgment interest on all amounts awarded, including compensation for the time value of funds wrongfully withheld;

3. Reasonable attorneys' fees and costs of suit, to the extent permitted by law;

4. Award of all additional damages available under applicable law;

5. Entry of an order confirming the IDR Awards pursuant to the Federal Arbitration Act and/or applicable state law;

6. Equitable relief requiring Defendants to pay the outstanding IDR Award Balances;

7. Prospective equitable relief requiring Defendants to comply with the No Surprises Act, including timely payment of all future IDR determinations within thirty (30) days unless timely vacated, and, where necessary, narrowly tailored reporting or compliance measures to ensure adherence to federal law;

8. Such other and further legal and equitable relief as the Court deems just and proper.

Dated: July 20, 2026

Respectfully submitted,

**PHI HEALTH, LLC**

/s/ Elizabeth Lemoine
Brant C. Martin (*Admitted Pro Hac Vice*)
Texas State Bar No. 24002529
brant.martin@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Fax: (817) 332-7789
-and-
Elizabeth H. Lemoine (*Admitted Pro Hac Vice*)
Texas State Bar No. 24027236
elizabeth.lemoine@wickphillips.com
Caitlin McNamara (*Admitted Pro Hac Vice*)
Texas State Bar No. 24100691
caitlin.mcnamara@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255

SNYDER MORGAN & KUCHMAY LLP

Jason M. Kuchmay, #20974-02
4211 Clubview Drive
Fort Wayne, Indiana 46804
Telephone: 574/457-3300
jmk@smk.law

## CERTIFICATE OF SERVICE

I hereby certify that, on July 20, 2026, a copy of the foregoing filing was served on all counsel of record via CM/ECF in accordance with the Federal Rules of Civil Procedure.

*/s/ Elizabeth Lemoine*